IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **ADRIAN ROJAS-FUERTE**, <br><br> Defendant. | Case No. 3:18-cr-347-SI <br><br> **OPINION AND ORDER** |

Billy J. Williams, United States Attorney, and Gregory R. Nyhus and Sarah K. Barr, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland Oregon 97204. Of Attorneys for the United States.

Conor Huseby, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, 101 SW Main Street, Suite 1700, Portland, Oregon 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Defendant Adrian Rojas-Fuerte ("Rojas-Fuerte") is charged with one count of illegal reentry after having been denied admission, excluded, deported, or removed from the United States as an alien on December 2, 2010, in violation of 8 U.S.C. § 1326. Among other things, that statute prohibits any alien who has been denied admission, excluded, deported, or removed from the United States, or has departed the United States while an order of exclusion, deportation, or removal is outstanding, from returning to the United States without permission.

PAGE 1 – OPINION AND ORDER

8 U.S.C. § 1326(a). In the pending criminal action, Rojas-Fuerte collaterally attacks the removal order entered against him in 2010, upon which the indictment is predicated. Rojas-Fuerte contends that his expedited removal proceeding in 2010 did not comport with due process because, among other errors, the immigration officer failed to obtain Rojas-Fuerte's signature on the notice of the charge against him, which was required under applicable regulations. For the reasons that follow, the Court grants Defendant's Motion to Dismiss Indictment (ECF 18) and Supplemental Motion to Dismiss (ECF 23).

## STANDARDS

To convict a defendant for illegal reentry under 8 U.S.C. § 1326, the Government bears the burden of proving that the defendant "left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1079 (9th Cir. 2011). A defendant charged under section 1326 has a due process right to collaterally attack the removal order that serves as a predicate element for the charged offense. "[W]here a deportation proceeding violates an alien's due process rights, the Government may not rely on any resulting deportation order as proof of an element of a criminal offense." *United States v. Leon-Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 840 (1987)). If the previous deportation order was not subjected to judicial review, an alien may collaterally attack the order in a subsequent criminal proceeding on the grounds that the proceeding resulting in the deportation order was "fundamentally unfair." *Barajas-Alvarado*, 655 F.3d at 1083 (quoting *Mendoza-Lopez*, 481 U.S. at 839-40)

An expedited removal proceeding under 8 U.S.C. § 1225 permits immigration officers to make determinations regarding an alien's admissibility and enter a removal order without a hearing or judicial review. Individuals may be subject to expedited removal proceedings if they "(1) 'are physically present in the U.S. without having been admitted or paroled,' (2) are discovered 'within

PAGE 2 – OPINION AND ORDER

100 air miles' of the United States border, and (3) cannot establish that they have been 'physically present in the U.S.' for the fourteen days prior to the encounter with immigration authorities." *United States v. Raya-Vaca*, 771 F.3d 1195, 1199 (9th Cir. 2014) (quoting Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01, 48880 (Aug. 11. 2004)). All aliens who meet these requirements are deemed "applicants for admission," "regardless of whether they seek to enter at a port of entry or have already entered the country." *Id.*

During expedited removal proceedings, immigration officers must determine the reason for an alien's inadmissibility, create a record of the facts and statements made by the alien, advise the alien of the charges against him or her on Form I-860, and give the alien an opportunity to respond to those charges in a sworn statement. *Id.* at 1199-1200. "Unless an alien professes a fear of persecution or claims to be a lawful permanent resident (LPR), the resulting expedited removal order 'is not subject to an administrative appeal'" and receives no judicial review. *Id.* at 1200 (quoting 8 U.S.C. § 1225(b)(1)(C)). To sustain a challenge to an indictment under § 1326 based on a collateral attack of the underlying deportation proceeding, a defendant bears the burden of establishing three requirements. First, he must have exhausted the administrative remedies available for seeking relief from the predicate removal order. *Id.* at 1201. Second, the deportation proceedings must have deprived him of the opportunity for judicial review. *Id.* Third, the removal order must have been "fundamentally unfair." *Id.* (quoting 8 U.S.C. § 1326(d)). A predicate removal order is fundamentally unfair if "the deportation proceeding violated the alien's due process rights and the alien suffered prejudice as a result." *United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1177 (9th Cir. 2015) (quotation omitted).

## BACKGROUND

Adrian Rojas-Fuerte is a citizen and national of Mexico and lives in Oregon with his wife and children. At least one of these children is a United States citizen. On September 28, 2010, he

PAGE 3 – OPINION AND ORDER

was convicted in Marion County Court for failing to perform the duties of a driver, and local authorities referred Mr. Rojas-Fuerte's case to U.S. Immigrations and Customs Enforcement ("ICE"). ICE officer Justin Normand questioned Rojas-Fuerte, who admitted that he did not have proper immigration documents to be in the United States. ICE entered the fingerprints of Rojas-Fuerte into its computer system and found that he had three prior encounters with ICE. They occurred on April 23, 2005, April 17, 2007, and April 26, 2007. After each encounter with ICE, Rojas-Fuerte was allowed to voluntarily return to Mexico. On October 1, 2010, Rojas-Fuerte was again allowed an administrative voluntary return to Mexico.

Several weeks later, on November 11, 2010, Border Patrol agents encountered Rojas-Fuerte near Nogales, Arizona. Rojas-Fuerte faced expedited removal proceedings because he was present in the United States without permission, had been discovered within 100 miles of the border, and could not establish that he had been present in the United States for the prior fourteen days. He was placed in an expedited removal proceeding and repatriated on November 12, 2010. On November 26, 2010, Border Patrol agents again encountered Rojas-Fuerte, this time near El Centro, California. He was again placed in expedited removal proceedings and he left the United States later that day on foot.

Four days later, on November 30, 2010, Border Patrol agents again found Rojas-Fuerte inside the United States, near Calexico, California. ICE placed Rojas-Fuerte in expedited removal proceedings and removed him from the United States. As part of this November 30, 2010 removal proceeding, which in part forms the basis of the present indictment, a Border Patrol agent completed a Notice and Order of Expedited Removal Form I-860. This form documents that Rojas-Fuerte was "an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by

the Immigration and Nationality Act." The form was signed by Border Patrol agent Justin Pryor, who signed a certificate of service attesting that he personally served the original Form I-860 on Rojas-Fuerte. Rojas-Fuerte, however, did not sign the form.[1] ECF 25-4 at 1. Although Rojas-Fuerte did not sign the Form I-860, he did sign the Notice to Alien Ordered Removed/Departure Verification Form I-296, which informed him in general terms that he had been found to be inadmissible and was prohibited from entering the United States for a period of five years. ECF 25-4 at 2. That form also advised Rojas-Fuerte that he could face criminal charges under 8 U.S.C. § 1326 if he reentered the United States without permission. Rojas-Fuerte also initialed, and had his fingerprints placed on, the Record of Sworn Statement in Proceedings Form I-867A, and he was read his rights and answered Border Patrol's questions. ECF 25-3 at 3-5. Finally, Rojas-Fuerte signed, initialed, and placed his fingerprints on the "Jurat" record of sworn statement, Form I-867B, in which he answered four questions about why he came to the United States and whether he feared harm if he were returned to Mexico. ECF 25-4 at 6-8.

On December 2, 2010, Border Patrol agents again encountered Rojas-Fuerte near Calexico, California. Border Patrol agents "reinstated" the November 30, 2010 removal order from three days earlier and issued a warrant of removal on December 2, 2010. On July 7, 2017, Rojas-Fuerte was indicted on the pending charge after being found in the United States on or about June 28, 2017.

## DISCUSSION

The statute governing expedited removal provides no opportunity for administrative or judicial review. Rojas-Fuerte, therefore, has exhausted all available administrative remedies and

---

[1] Similarly, Rojas-Fuerte did not sign any of the I-860 forms during any of his previous expedited removal proceedings.

was deprived of the opportunity for judicial review, satisfying the first two elements required to collaterally attack his removal proceedings. *Rayas-Vaca*, 771 F.3d at 1202. To successfully challenge the 2010 deportation order, he must still establish that the earlier proceeding was "fundamentally unfair," meaning that his due process rights were violated and he was prejudiced as a result. *Garcia-Gonzalez*, 791 F.3d at 1177; *see also United States v. Garcia-Santana*, 774 F.3d 528, 532-33 (9th Cir. 2014).

A. **Due Process**

Rojas-Fuerte first argues that he was entitled to due process during his expedited removal proceeding. Rojas-Fuerte was not denied entry into the United States—he was apprehended in the United States several miles north of the border.[2] The Supreme Court has explained that after an individual enters the United States, he is entitled to the protections of due process. *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). "It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *Raya-Vaca*, 771 F.3d at 1203. "[T]he Due Process Clause applies to all who have entered the United States—legally or not—and given the clear fact of [Rojas-Fuerte's] entry, . . . [he] was entitled to expedited removal proceedings that conformed to the dictates of due process." *Raya-Vaca*, 771 F.3d at 1203. Further, whatever due process Congress and federal

---

[2] Aliens who have entered the United States are entitled to more due process protections than aliens denied admission at a port of entry, over whom Congress has plenary power and who are only entitled to those procedures established by Congress. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950); compare *Barajas-Alvarado* 655 F.3d at 1080 (alien presented false identification at port of entry) with *Raya-Vaca*, 771 F.3d at 1199 (alien apprehended inside Untied States).

agency regulations have authorized, an alien is entitled to it. *United States v. Sanchez-Aguilar*, 719 F.3d 1108, 1112 (9th Cir. 2013).

Even expedited removal proceedings must comport with the "essential principle[s]" of due process: notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Raya-Vaca*, 755 F.3d at 1204. "Although not every violation of a regulation rises to the level of a due process violation, certain regulations may in fact be mandated by the Constitution or federal law." *Raya-Vaca*, 755 F.3d at 1204 (internal citations and quotation marks omitted). Some regulations exist to protect due process and other constitutional rights, and if those regulations are violated, a due process violation occurs. When Congress or a federal agency enacts a procedure through statute or regulation, "aliens are entitled to it." *Barajas-Alvarado*, 655 F.3d at 1084 (9th Cir. 2011). As a non-admitted alien apprehended inside the United States, Rojas-Fuerte was entitled to the minimum requirements of due process outlined in the federal regulations governing expedited removal proceedings.

The regulations governing expedited removal proceedings establish specific procedures that Border Patrol agents must follow. "[I]n mandatory terms, [it is] the immigration officer's duty to inform the alien of the charge against him and to allow the alien to review the sworn statement prepared in his name." *Raya-Vaca*, 771 F.3d at 1204. Specifically, 8 C.F.R. § 235.3(b)(2)(i) requires:

> The examining immigration officer shall read (or have read) to the alien all information contained on Form I–867A. Following questioning and recording of the alien's statement regarding identity, alienage, and inadmissibility, the examining immigration officer shall record the alien's response to the questions contained on Form I–867B, and have the alien read (or have read to him or her) the statement, and the alien shall sign and initial each page of the statement and each correction. The examining immigration officer shall advise the alien of the charges against him or her on Form I–860, Notice and Order of Expedited Removal, and the

> alien shall be given an opportunity to respond to those charges in the sworn statement. After obtaining supervisory concurrence in accordance with paragraph (b)(7) of this section, the examining immigration official shall serve the alien with Form I–860 *and the alien shall sign the reverse of the form acknowledging receipt*. Interpretative assistance shall be used if necessary to communicate with the alien.

8 C.F.R. § 235.3(b)(2)(i) (emphasis added).

The Form I-860 is the only document that informs an alien of the reason for his or her inadmissibility. The form contains a series of check-boxes and informs the alien that he or she is inadmissible under 8 U.S.C. §§ 1182(a)(6)(C)(i); (6)(C)(ii); (7)(A)(i)(I); (7)(A)(i)(II); (7)(B)(i)(I) and/or (7)(B)(i)(II). These statutory prohibitions make inadmissible, for example: "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure . . . a visa, other documentation, or admission into the United States," *id.* § 1182(a)(6)(C)(i); and "[a]ny alien who falsely represents . . . himself or herself to be a citizen of the United States for any purpose or benefit under this chapter," *id.* § 1182(a)(6)(C)(ii). On Rojas-Fuerte's Form I-860, the box checked was § (a)(7)(A)(i)(I), meaning that he was accused of being an immigrant "who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document." *Id.* § 1182(a)(7)(A)(i)(I).

The regulation itself notes that the purpose of the Form I-860 is to "advise the alien of the charges against him." 8 C.F.R. § 235.3(b)(2)(i). "As Form I-860 provides notice to Defendant of his rights, a missing signature on that page undermines the assurance that he was notified of his due process rights at the time of his removal." *United States v. Mejia-Avila*, 2016 WL 1423845, at *1 (E.D. Wa. Apr. 5, 2016). Notice is a key component of due process. If Rojas-Fuerte was not advised of the charges against him in the Form I-860, his due process rights would be violated. In *Garcia-Gonzalez*, the Government conceded that "by not presenting for his review and signature Forms I-860 and I-867AB," immigration officers violated the defendant's due

PAGE 8 – OPINION AND ORDER

process rights. 791 F.3d at 1179. The Government makes no similar concession here, noting that Rojas-Fuerte signed the I-867AB Form, but not the I-860.

The Court notes that a Border Patrol agent signed the Form I-860, stating "I personally served the original of this notice upon the above-named person on 11/30/2010." ECF 25-4 at 1. That statement, however, was unsworn and not under penalty of perjury. In the absence of a signature by Rojas-Fuerte, or at least sworn testimony by the Border Patrol officer, the Court cannot confirm that Rojas-Fuerte actually was advised of the specific charge or charges against him in a language that he could understand sufficient to provide the constitutionally-required notice.

The governing regulation, 8 C.F.R. § 235.3(b)(2)(i), serves an important purpose in providing the notice required by due process— "notice of the charge the alien faces and the alien's opportunity to respond to that charge." *Raya-Vaca*, 771 F.3d at 1204. To facilitate that purpose, the regulation expressly requires that the alien personally sign the form and acknowledge its receipt. The absence of Rojas-Fuerte's signature is some indication that Rojas-Fuerte was not provided with the required notice of the reason for his inadmissibility. The form in the record does not provide the Court with sufficient assurance that Rojas-Fuerte's due process rights were adequately protected during the 2010 expedited removal proceeding. The failure to obtain an alien's signature on a Form I-860 constitutes a presumptive violation of the alien's due process rights.[3] *See United States v. Hernandez-Rodriguez*, 2019 WL 1508039, at *1 (E.D. Wash. Apr. 5, 2019); *United States v. Ramirez-Diaz*, 359 F. Supp. 3d 994, 999 (D. Or. 2019);

---

[3] This presumption perhaps could be rebutted by, for example, sworn testimony or a signed affidavit from the Border Patrol agent that the alien was served with the Form I-860, in a language that the alien could understand, but the alien refused to sign the form or acknowledge receipt. No such evidence, however, was provided by the Government in this case.

*Mejia-Avila*, 2016 WL 1423845, at *1; *United States v. Arteaga-Gonzalez*, 2013 WL 5462285, at *4 (S.D. Cal. Sept. 30, 2013). "Accordingly, because [Rojas-Fuerte] was protected by the Due Process Clause when he faced removal, . . . any failure to inform [Rojas-Fuerte] of the charge against him" constituted a violation of [Rojas-Fuerte's] due process rights. *Raya-Vaca*, 771 F.3d at 1204.[4]

## B. Prejudice and Plausible Grounds for Relief

As the Ninth Circuit has explained, "there are, for present purposes, two types of regulations: (1) those that protect fundamental due process rights, and (2) and those that do not." *Id.* at 1205. "The second type of regulation only implicates due process concerns when the failure to comply with the regulation causes prejudice." *Id*. "A violation of the first type of regulation, however, implicates due process concerns even without a prejudice inquiry." *Id*. In the case of Rojas-Fuerte, because the regulation that was violated implicates due process concerns, Rojas-Fuerte need not show that the violation directly caused him prejudice.

To succeed in demonstrating that the 2010 expedited removal order was fundamentally unfair, however, Rojas-Fuerte "must also establish that he suffered prejudice as a result of the *entry* of the order." *See id*. at 1206 (emphasis added). To do so, he "need not conclusively demonstrate that he or she would have received relief to show prejudice, but must show only that there were plausible grounds for relief." *United States v. Ramos*, 623 F.3d 672, 684 (9th Cir. 2010) (internal quotation marks omitted); *United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1086 (9th Cir. 1996). "In other words, to show 'plausible grounds' for relief, an alien must show

---

[4] In *Barajas-Alvarado*, the defendant also argued that his due process rights were violated because he failed to sign the Form I-860. The court, however, found that because the record was silent on whether Barajas-Alvarado had signed the Form I-860, he had not carried his burden of proof on that claim. *See* 655 F.3d at 1088 n.12. By contrast, the record in the pending case shows that Rojas-Fuerte did not sign the Form I-860.

that, in light of the factors relevant to the form of relief being sought, and based on the 'unique circumstances of [the alien's] own case,' it is plausible (not merely conceivable) that the [immigration officials] would have exercised his discretion in the alien's favor." *Barajas-Alvarado*, 655 F.3d at 1089. Rojas-Fuerte argues that he suffered prejudice because he was not told of potential avenues for relief from deportation, such as being permitted to withdraw his application for admission and immediately depart the United States voluntarily. 8 U.S.C. § 1225(a)(4).

Courts use a two-step process to determine whether a defendant has shown that he "would plausibly have been granted discretionary relief from a removal order." *Raya-Vaca*, 771 F.3d at 1206. "First, we identify the factors relevant to the [agency's] exercise of discretion for the relief being sought." *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013). Second, "we determine whether, in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the [defendnat's] own case," it is plausible that immigration officials *might* have granted relief from removal. *Id.* (quotation marks omitted).

*Raya-Vaca* and *Barajas-Alvarado* provide clear guidance for analyzing whether a defendant has a plausible claim for relief in the form of withdrawal of the application for admission. *Raya-Vaca*, 771 F.3d at 1206; *Barajas-Alvarado*, 655 F.3d at 1090. "Although an arriving alien may ask to withdraw an application for admission, the grant of such relief is discretionary." *Barajas-Alvarado*, 655 F.3d at 1089 (citing 8 C.F.R. § 1235.4). Courts look to the Inspector's Field Manual, an internal agency document that guides immigration officials' determinations as to when to grant withdrawal of application for admission. *Garcia-Gonzalez*, 791 F.3d at 1177. "The Inspector's Field Manual provides for a highly individualized determination and instructs officers to 'consider all facts and circumstances related to the case to

determine whether permitting withdrawal would be in the best interest of justice." *Raya-Vaca*, 771 F.3d at 1207 (quoting INS Inspector's Field Manual § 17.2(a)(2007). The manual lists six factors relevant to the determination:

> "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations."

*Barajas-Alvarado*, 655 F.3d at 1090 (citing INS Inspector's Field Manual § 17.2 (2001)). Lastly, the Inspector's Field Manual cautions that withdrawal should "ordinarily" not be permitted "in situations where there is obvious, deliberate fraud on the part of the applicant." *Id.* These factors guide the Court's analysis. *See Mejia-Avila*, 2016 WL 1423845, at *1-2.

In *Barajas-Alvarado*, the court determined that the alien was unable to demonstrate that relief in the form of withdrawal was plausible. In *Barajas-Alvarado*, the defendant had "deliberately presented false documents to inspection officers in an effort to gain admission to the United States" and "[h]is deliberate use of false documents establishe[d] his intent to violate the law." *Id.; see also Garcia-Gonzalez*, 791 F.3d at 1179 (defendant's use of false documents at port of entry had a "disqualifying effect").

In contrast, in *Raya-Vaca*, the court found that the alien had demonstrated a plausible basis for relief even though the alien had three misdemeanor convictions and six prior illegal reentries. *See Raya-Vaca*, 771 F.3d at 1198, 1208-09. The alien had a long-term partner and children who were United States citizens and he had been granted withdrawal of his application for admission on all previous occasions, demonstrating that it was not unreasonable that he would have been granted withdrawal again. *Id.* at 1209. Further, *Raya-Vaca* has shown that in 2004, 70 percent of individuals subject to expedited removal proceedings were permitted to

withdraw their applications, and in 2008, 44 percent were, demonstrating that such relief was not unrealistic. *Id.*

Unlike the defendant in *Barajas-Alvarado*, Rojas-Fuerte did not commit fraud when entering the United States. Like the defendant in *Raya-Vaca*, Rojas-Fuerte also had a record of prior illegal entries into the United States, once in 2005, twice in 2007, and four times in 2010 (not counting the December 2, 2010 entry). Although this is a serious history of immigration violations, Rojas-Fuerte had only one more illegal entry than the defendant in *Raya-Vaca*. Rojas-Fuerte did intend to violate the law, as evidenced by his unlawful entry into the United States by walking across the desert without legal documents authorizing that entry. Although Rojas-Fuerte had a misdemeanor conviction for failure to perform the duties of a driver, the defendant in *Raya-Vaca* had three misdemeanor convictions, including convictions for burglary and making a false statement to a federal officer. *Id.* at 1198. Thus, Rojas-Fuerte's criminal record, while weighing against a finding of plausibility of relief, does not preclude it.

Further, Rojas-Fuerte has a child who is a United States citizen. Unlike the defendant in *Barajas-Alvarado*, where "there were no humanitarian or public interest considerations weighing in his favor," *Barajas-Alvarado*, 655 F.3d at 1090, Rojas-Fuerte may have a pathway to legal status through his child, and there is a "compelling humanitarian interest in keeping families united," *Raya-Vaca*, 771 F.3d at 1208 (citation omitted). Although Rojas-Fuerte's removal proceedings took place in 2010, and DHS stopped publishing data on the percentage of aliens granted voluntary withdrawal in 2008, "a very significant proportion of aliens in expedited removal proceedings obtained relief" up through 2008. *Id.* at 1209. The defendant in *Raya-Vaca* was removed in 2011, one year after Rojas-Fuerte, and the court found that the 2008 data provided "relevant context for the frequency with which withdrawal was permitted." *Id.* When

considered in conjunction with other individualized evidence supporting the plausibility of relief, this evidence supports Rojas-Fuerte's argument that relief was at least plausible.

Given these considerations, and the strong parallels between the individualized circumstances in Rojas-Fuerte's case and the *Raya-Vaca* case, the Court concludes that Rojas-Fuerte has established that there was an evidentiary basis on which relief could have been granted. Because the Court finds that Rojas-Fuerte's due process rights were violated and that he suffered prejudice, the Court concludes that the original removal order was fundamentally unfair and cannot serve as the basis of a criminal charge under 8 U.S.C. § 1326.[5] Because that removal order is the only predicate alleged in the indictment, the criminal charge against Rojas-Fuerte must be dismissed.

## CONCLUSION

The Motions to Dismiss (ECF 23 and ECF 18) are GRANTED and the indictment is DISMISSED.

**IT IS SO ORDERED**.

DATED this 19th day of April, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[5] Rojas-Fuerte also argues that his Fifth Amendment right to counsel was violated when immigration officials did not offer him the opportunity to consult with an attorney. Because the Court finds that his due process rights were violated by the failure to obtain his signature on the Form I-860, the Court need not reach this argument. Further, the Court notes that this case does not present a situation where an alien encountered on United States soil requests to speak with an attorney and that request was denied.